IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH HOLMES          :          CIVIL ACTION
                              :
    v.                    :
                              :          No. 04-4794
COUNTY OF DELAWARE, et.al    :

**<u>MEMORANDUM</u>**

Ludwig, J.                                      March 28, 2007

      This is a 42 U.S.C. § 1983 action.  The complaint alleges that the arrest and incarceration of plaintiff Joseph Holmes for criminal  homicide violated his constitutional right to be free from arrest and detention without probable cause.  The gravamen of the claim is that the affidavit of probable cause of the arresting officer, defendant Detective Todd Nuttall,[1] was based on the statements of Dashawn Hinds, allegedly coerced by Nuttall,  and of Michelle Gray, which Nuttall allegedly knew to be false.  Nuttall contends that there was no constitutional violation and that he is entitled to qualified immunity.  Because there is a triable issue of law and fact, his motion for summary judgment must be denied.  Fed. R. Civ. P. 56©.[2]

---

    [1] Claims against other named defendants were dismissed as follows: the Criminal Investigation Division of the Office of the Delaware County District Attorney and the City of Chester Police Department, by order dated June 7, 2005; the County of Delaware and the Office of the District Attorney of Delaware County, by stipulation dated January 20, 2006; Detective Michael Palmer, by order dated March 6, 2006.

    [2] "Summary judgment is proper when there is 'no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' . . . . A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.'" <u>Doe v. Abington Friends School</u>,

I. The Arrest

The following facts are undisputed.

On October 16, 2001, when Police Corporal Michael Beverly, of the Chester City Police Department, was fatally shot, Nuttall went to the crime scene and assumed the role of lead investigator.  More than fifty witnesses were interviewed during a twelve-month investigation.  Deposition testimony of Detective Michael Palmer, at 68-71, Exhibit "B" to defendant's motion.

Nearly a year after the murder, on September 26, 2002, Nuttall and Detective List interviewed Michelle Gray.  Deposition of Todd Nuttall, at 32, Exhibit "C" to defendant's motion.  During the interview, Gray gave a recorded statement in which she stated she had seen three men in the area of the murder, one of whom she identified as plaintiff.  Recorded Statement, Exhibit "D" to defendant's motion, pp. 1-2.  She stated she witnessed a tussle, heard shots, and then saw the officer's body on the ground.  Exhibit "D", pp. 4-6.  She also stated that a week or so after the murder, she heard plaintiff say, referring to the crime - "Yo, we really [ ] 'did it.'"  Exhibit "D", p.9.  Later, on October 10, 2002, Gray identified plaintiff and Dashawn Hinds (another man she placed at the scene of the murder) in a photo layout.  Nuttall N.T., at 139 (she identified Mr. Hinds as "NY"); photo layout, Exhibit "E" to defendant's motion.

– F.3d –, 2007 WL 777561, at * 3 (3d Cir., Mar. 15, 2007) (citations omitted).  Judgment will be granted in favor of defendant and against plaintiff on the state law intentional infliction of emotional distress claim.  This is unopposed.

Based on Gray's identification, Nuttall and Detective Randy Bothwell interviewed Hinds. On October 11, 2002, Hinds also gave a recorded statement to Nuttall and Detectives Bothwell and Palmer and in it stated that plaintiff was the murderer. Statement of Dashawn Hinds, pp. 4-6, Exhibit "I" to defendant's motion.

Nuttall immediately presented the statements of Gray and Hinds, and the corroborating statement of Daneen Haywood,[3] to the Delaware County District Attorney, who gave permission to prepare an affidavit of probable cause to arrest plaintiff for the murder of Corporal Beverly. On October 12, 2002, Nuttall submitted the affidavit to a district justice, who approved it. Complaint, 19; Warrant and Affidavit of Probable Cause, Exhibit "A" to defendant's motion. Later the same day, Nuttall arrested plaintiff.[4]

II. The Affidavit of Probable Cause

As to plaintiff's involvement, the affidavit relies on the statements of Gray and Hinds (identified as "W-3" and "W-4", respectively, in the affidavit). Exhibit "A".

With respect to Gray's statement, Nuttall discovered after plaintiff's arrest that Gray was under house arrest at the time of the murder and presumably could not have witnessed

---

[3] Three days after the murder, Daneen Haywood, who was in the vicinity of the murder just prior to its occurrence, was interviewed by Detective Charles List. Deposition of Todd Nuttall, at 80, Exhibit "C" to defendant's motion. Haywood stated that at the time of the murder she saw "three young gentlemen" in the area. Haywood Interview Sheet, Exhibit "H" to defendant's motion.

[4] Following his arrest, plaintiff was incarcerated for more than a year before going to trial.

3

it.  Nuttall N.T., at 94-95.[5]  He also learned after plaintiff's arrest that Gray bore a grudge against plaintiff, who was involved in a relationship with a friend of Gray's, and on several occasions, Gray had called the police to complain about plaintiff.  Transcript of Proceedings, Com. v. Holmes, at 96-105, Exhibit "C" to plaintiff's opposition.

As to Hinds' statement - Hinds' deposition testimony was that upon questioning by Nuttall and Officer Palmer, when he said he knew nothing about the murder, Nuttall threatened to punch him if he continued with that "lie."  Dashawn Hinds deposition, N.T.16, 18, Exhibit "F" to defendant's motion.  Hinds maintains that he was handcuffed at the time of the interrogation.  Id. at 17.  After Nuttall told Hinds that a witness had placed him at the scene of the murder, he showed him pictures of plaintiff and another man involved in the murder.  Id. at 20-22.  Hinds identified plaintiff and Maurice Day as individuals he recognized.  The officers allegedly told Hinds how the murder had taken place and advised him that he would either be a "witness or a defendant."  Id. at 23.  According to Hinds, because he was afraid and to appease Nuttall, he waived his right to counsel and implicated plaintiff in the murder.  Id. at 27.[6]  Hinds testified that his subsequent recorded statement, in

---

[5] Gray testified at trial that she had removed an electronic ankle bracelet and left her home on the night of the murder.  The testimony of a representative of the manufacturer of the bracelet was offered  to refute this possibility.  Transcript of Proceedings, Com. v. Holmes, at 6-22, Exhibit "B" to plaintiff's opposition.

[6] The deposition testimony was as follows:

Q: So when you say in the statement that you saw Joseph Holmes involved in the homicide, why did you say that?
A: Because I couldn't say nobody else.  They was the only two, like people that they was

which he implicated plaintiff, was false.  Id. at 27-28.  At the conclusion of the recorded statement, Hinds also stated that he was not giving the statement of his own free will. Recorded Statement, Exhibit "I", at 17.  At deposition, he explained that this meant that the contents of the statement were untrue.  Exhibit "F", at 171.  At Holmes' trial, Hinds recanted his recorded statement, again stating that it was untrue.  Exhibit "F" at 59.  At the conclusion of the trial, Holmes was acquitted by a jury of all charges.

III. Constitutional Claims

Based on the foregoing, plaintiff asserts that his constitutional rights to be free from false arrest and false imprisonment under the Fourth and Fourteenth Amendments were violated. In response, Nuttall relies on the arrest warrant issued by the district justice as evidence of probable cause to negate the Fourth Amendment violation.  Probable cause exists where there are "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  Beck v. Ohio, 379 U.S. 89, 91 (1964).  This analysis takes into account only those facts available at the time of the alleged unlawful conduct - here, at the time Nuttall applied for the arrest warrant.  Sharrar v. Felsing, 128 F.2d 810, 817-18 (3d Cir. 1997).  Therefore, the issue is whether, at the time he applied for the warrant, Nuttall reasonably believed that plaintiff had committed the crime in

---

saying was involved with it, and me.
     Q: So is the reason why you gave the statement, because the detectives wanted you to say Joseph Holmes was involved?
     A: Yes.
Hinds N.T., at 27-28, Exhibit "F" to defendant's motion.

question.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

Police officers acting pursuant to a facially valid warrant are generally deemed to have probable cause.  Garcia v. County of Bucks, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001). However, "an arrest warrant issued by a magistrate or a judge does not, in itself, shelter an officer from liability for false arrest."  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (citation omitted).  Here, plaintiff does not attack the facial validity of the warrant. Therefore, as defendant argues, in order to establish his § 1983 claim, plaintiff must prove by a preponderance of the evidence "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that 'such statements or omissions are material, or necessary to the finding of probable cause.'"  Id. at 786-87.

According to plaintiff, Hinds' deposition testimony, his recanting of his recorded statement at trial, and the denial in the recorded statement itself that it was freely given are proof that Hinds' identification of plaintiff as one of the perpetrators of the crime was false. In addition, Nuttall's role in obtaining that evidence for submission to the district justice suggest that Nuttall knowingly affirmed an untrue affidavit in applying for the warrant. Viewing this evidence in the light most favorable to plaintiff, Hinds' statement must be rejected as a valid basis for issuance of the arrest warrant.  See Wilson, 212 F.3d at 790 ("substantial evidence of the witness's own unreliability that is known to the arresting officers could outweigh the identification such that probable cause would not exist.")

6

Nevertheless, given Gray's statement, and the corroborating statement of Haywood, Hinds' statement is not essential to a finding of probable cause. Nuttall's inclusion of it in the affidavit of probable cause does not itself provide a sufficient basis to defeat Nuttall's motion.

Plaintiff also maintains that Nuttall submitted Gray's statement knowing that she could not have witnessed the murder because she was on house arrest at the time it occurred. Nuttall states that he learned of Gray's house arrest *only after* plaintiff was arrested. Nuttall N.T., at 94-95. In response, plaintiff asserts that the testimony of Detective Palmer makes clear that Nuttall was aware of Gray's arrest prior to the murder no later than "the evening after her statement." Her statement was given on October 10, 2002, two days before the warrant was applied for and issued. Palmer N.T., at 42-43. Plaintiff contends that Nuttall should have investigated Gray's custodial status at the time of the murder. Nuttall concedes that he did not do so, but says it would have been fruitless because Gray's records do not disclose the sentence she received following her arrest.

Plaintiff also contends that Nuttall should have learned of the animosity that existed between Gray and plaintiff before submitting Gray's statement. Here, too, Nuttall concedes that he did not investigate Gray's alleged hostility towards plaintiff prior to applying for the warrant.

Probable cause does not require officers to have evidence sufficient to establish guilt beyond a reasonable doubt. U.S. v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984). "An

7

officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence, or to pursue the possibility that the suspected offender is innocent." Vassalo v. Timmoney, Civ. A. No. 00-84, 2001 WL 1243517, at *7 (E.D. Pa., Oct. 15, 2001) (citations omitted). Furthermore, even if Nuttall was negligent in failing to investigate Gray's status on the date of the murder, or her attitude toward plaintiff, negligent police work cannot form the basis of a constitutional claim. "The issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether the information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

However, even in light of this standard, it cannot be said in this case as a matter of law that there existed "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Beck, 379 U.S. at 91. Though it may not have been incumbent on Nuttall to investigate further in an effort to exculpate plaintiff, it was incumbent on him to check whether his reliance on Gray's statement was reasonable under the questionable circumstances. Given this record, the evidence as to what Nuttall knew when he submitted the affidavit of probable cause is contradictory and open to possible impeachment, and that issue should be submitted to a trier of fact.

IV. Qualified Immunity

Nuttall also urges that he is entitled to qualified immunity.  A qualified immunity defense involves two elements.  First, it must be "'determine[d] whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'"  Wilson, 212 F.3d at 786, quoting Conn v. Gabbert, 526 U.S. 286,   (1999).  "Summary judgment is appropriate if no reasonable juror could conclude that [plaintiff's] clearly established rights were violated."  Wilson, 212 F.3d at 786, citing Orsatti, 71 F.3d at 482.  Here, viewing the facts most favorably to plaintiff requires the inference that a constitutional violation - his arrest and incarceration without probable cause - did occur.

Second: "Government officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sharrar, 128 F.3d 826 (citation omitted).  The relevant inquiry is "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession."  Id.  Therefore, if Nuttall "reasonably but mistakenly concluded that [his] conduct comported with the requirements of the Fourth Amendment, [he] is entitled to immunity."  Id., quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Here, a question of fact exists as to what Nuttall knew at the time he submitted Gray's statement to the district justice.  Also, if Hinds' statement is to be offered to prove probable

cause, it also presents credibility issues.  Therefore, on this record, it cannot be determined that Nuttall reasonably believed his investigation comported with the requirements of the Fourth Amendment.[7]

BY THE COURT:

 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J .

---

[7] Plaintiff cites cases from the Second, Eighth, Sixth and Tenth Circuits in support of his position that the failure to conduct a reasonably thorough investigation may result in the rejection of a qualified immunity defense.  See Gardenhire v. Schubert, 205 F.3d 303 (6th Cir. 2000); Kuel v. Burtis, 173 F.3d 646 (8th Cir. 1999); Baptiste v. J.C. Penney Co., 147 F.3d 1252 (10th Cir. 1998; Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991), *cert. denied sub nom* Lillis v. Golino, 505 U.S. 1221 (1992).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOSEPH HOLMES                    :            CIVIL ACTION
                                 :
        v.                       :
                                 :            No. 04-4794
COUNTY OF DELAWARE, et.al        :


## <u>ORDER</u>

AND NOW, this    28th    day of March, 2007, "Defendant Todd Nuttall's Motion

for Summary Judgment" on plaintiff's claim of intentional infliction of emotional distress

is granted as unopposed.  The remainder of defendant's motion is denied.  A memorandum

follows.


BY THE COURT:



 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J .

11